[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
ON PLAINTIFF'S MOTION FOR CONTEMPT #138 AND MOTION FOR ORDER POST JUDGMENT #139
On November 3 and 4, 1999, a hearing was held on the above two motions, at which time testimony was heard and exhibits were introduced into evidence. Many of the background facts are not in dispute.
The judgment of dissolution was entered on March 2, 1994, and a separation agreement dated December 13, 1993 was incorporated into the judgment in which the defendant (wife) agreed to pay Attorney Robert V. Cimmino his legal fees for representing her in the dissolution action. On March 22, 1995, Attorney James Driscoll, representing Attorney Cimmino, brought an action against the defendant and obtained a judgment for $3088, plus interest. He also attached a second mortgage note and deed for CT Page 13 $15,000 in favor of the defendant executed by the plaintiff which he recorded on March 21, 1999 in Vol. 294, page 263 of the Brookfield Land Records. In a letter dated March 23, 1995 from the plaintiff (husband) to Attorney Driscoll, the attorney for Attorney Cimmino, advised him that this mortgage note was paid in full on January 3, 1995, and requested him to remove the attachment lien from the Brookfield Land Records.
On May 1, 1999, the plaintiff filed a motion to hold the wife in contempt for her failure to pay her attorney's fees to Attorney Cimmino pursuant to the judgment. As a result of this motion, the parties entered into an agreement on May 17, 1999 in which the wife agreed to release the mortgage and "take all steps necessary to resolve her dispute over the legal fees she owed Attorney Cimmino and provide either a release of attachment and release of execution or subpoena" with payment of all costs. The wife now claims she does not remember signing the agreement nor who was present at that hearing of May 17th when she was represented by Attorney Allen G. Palmer. During the past four years, she has signed at least three agreements modifying the original judgment. She had been the husband's legal secretary and was familiar with preparing agreements. She appeared alert and intelligent at these hearings. The court rejects her testimony of not understanding the agreement of May 17, 1999; of being intimidated by the plaintiff; and attributing her loss of memory to the emotional abuse she suffered as a child.
The court believes she has the intelligence and experience to know what she agreed to in the May 17th agreement and will hold her to its terms.
Her attorney claims the orders of May 17, 1999 should be vacated because he was not aware that the attachment had been served on the plaintiff on March 22, 1995, and the plaintiff had an obligation to disclose it to him. The fact is, the defendant was also served with this attachment on March 22, 1995, and she knew about it and should have told him. The plaintiff also notified Attorney Driscoll that he had paid the $15,000, note and mortgage in full on January 3, 1995, almost three months before he was served. The defendant and her attorney also knew or should have known that a lawsuit was pending in Danbury Superior Court,Cimmino v. Gersten, Docket No. CV95-0319240, relative to the legal fees she owed Attorney Cimmino. This information was available to Attorney Palmer. The plaintiff had no obligation to the plaintiff to disclose this information to the defendant CT Page 14 wife's attorney.
Because the plaintiff had notice of attachment on March 21, 1995, it did not make him liable for the wife's legal fees. Under § 52-381 of the Connecticut General Statutes, the plaintiff was not obligated to withhold the payments due the wife under the $15,000 note, since the note had been paid in full some three months before the plaintiff received the notice of attachment. The defendant's reliance on Huybrechts v. Huybrechts,4 Conn. App. 319 (1985) is misplaced. In that case, the creditor had given notice seven days before the debt was paid and stands for the proposition that the issuance of a draft does not discharge the debt until the draft is paid.
Pursuant to the judgment, the plaintiff also paid the defendant alimony of approximately $30,000 from March 21 through December 31, 1995. The defendant's attorney now claims the plaintiff is required to pay his client's legal fees owed to Attorney Cimmino since the plaintiff was served with the notice of attachment on March 21, 1995. The court finds that § 52-381 of the Connecticut General Statutes does not apply to the facts in this case. His remedy is to bring an action of scire facias to give the plaintiff due process whereby he can offer any defenses he might have on this debt owed to Attorney Cimmino.
The court has considered all the testimony and the exhibits offered at trial and finds the defendant in contempt. She is ordered to pay Robert Cimmino attorney fees of $3088, plus interest to date, within the next thirty (30) days. The court further orders the defendant to pay plaintiff's legal fees of $750 within the next thirty (30) days. The court finds the plaintiff's attorney has spent at least six hours of court time and the same number of hours in preparing briefs and researching the law on the motion for contempt and finds $750 is a reasonable fee pursuant to § 46b-87 of the Connecticut General Statutes.
The plaintiff seeks an order to require the defendant to pay one-half of the unreimbursed health insurance premiums for the child. Section 12.1 of the Separation Agreement requires plaintiff to provide this health insurance, and there is nothing in this section that requires the defendant to pay any health insurance premiums.
The next section, 12.2, requires the parties to equally pay for the child's unreimbursed medical, dental, optical and CT Page 15 prescriptions, or other related expense. The court finds these "other related expenses" related to unreimbursed medical expenses such as psychiatric, psychological, expenses for a podiatrist or an osteopath medical services and not to health insurance premiums referred to in § 12.1 of the agreement. Therefore, the child's health insurance premiums shall be the plaintiff's sole responsibility.
The court orders the defendant to pay 50 percent of all unreimbursed medical expenses under § 12.1 after verification of these amounts, if any, of reimbursed medical payments received' by the plaintiff from his insurance carrier.
Romeo G. Petroni Judge Trial Referee